# Union Canal Company *against* Landis.

By the act of assembly of the 29th of September 1791, the right to erect
dams in the Swatara creek, then a public highway, was given to the Schuylkill
and Susquehanna Navigation Company; subsequent rights to erect dams and
build mills on the same stream are subordinate to it; and the owners thereof
cannot recover damages from the Union Canal Company, who succeeded to the
rights of the Schuylkill and Susquehanna Nagivation Company, for injury done
to their mills by reason of the erection of a dam in the said stream.

*CERTIORARI* to the quarter sessions of *Dauphin* county.

Christian Landis and wife against the Union Canal Company.
This proceeding was founded upon the following petition.

" The petition of Christian Landis and Elizabeth Landis, his
wife, of Derry township in said county, respectfully represents:—

" That in the year 1800 and long before, Christian Bear, of said
township, was seised in his demesne, as of fee of and in the follow-
ing described real estate situate in the said township, and bounded
and described as follows, to wit: Beginning at a post on the bank

of the Swatara creek (or river), and from thence extending by land of Frederick Hummel, south thirty degrees east, twenty perches and two-tenths of a perch to a post, thence north fifty-three degrees west, thirty-nine and four-tenths to a post, and south forty-four degrees and a half west, twenty-eight perches to a walnut tree, thence by land of Adam Reigel, the five courses and distances next following, namely, north thirty-nine degrees and three-quarters west, fifty-one perches and three-tenths to a post, north twenty-three degrees east, eight perches and a quarter to a post, north sixty-nine degrees west, seven perches and two-tenths to a post, north eight degrees and a half east, ten perches to a post, and north seventy degrees and a quarter west, eighty-one perches and two-tenths to a white oak, on the bank of Swatara creek aforesaid, and thence up the said creek the several courses thereof, two hundred and one perches and a half to the place of beginning, containing thirty-one acres and fifty-one perches, together with all and singular the ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances thereunto belonging and appertaining, and the said Christian Bear being so thereof seised and possessed upon the petition of a number of the inhabitants of the said township of Derry, and of the townships of Londonderry and Hanover in said county, to the general assembly of Pennsylvania, stating that the said Christian Bear was proprietor of said tract of land, and that it was advantageously situated for water-works adjoining the said Swatara creek, which is, by the laws of this commonwealth, declared a public highway, and praying that a law might be passed authorising the said Charles Bear to erect a dam in said creek opposite to his land, about a half mile from Hummelstown, he having obtained the consent thereto of Peter Eversoll, the owner of the land on the opposite side of the creek, whereupon the said general assembly did enact, ‘that it shall and may be lawful for the said Christian Bear, his heirs and assigns, and they or either of them,’ were by the said act ‘authorised and empowered to erect, support and forever maintain a mill-dam across Swatara creek, opposite to the plantation of the said Christian Bear, so as to raise the water eighteen inches above the common surface, for the purpose of supplying such mills, or other water-works as he or they may think proper to erect thereon;’ which said act was approved by his excellency Thomas M'Kean, then governor of the commonwealth of Pennsylvania, on the 12th of March 1800. In pursuance whereof, the said Christian Bear did, in the year 1803, at a great expense, erect a dam in the said Swatara creek, opposite to his said plantation, as designated and authorised by said act, and did further erect during the said year, connected with the said dam upon his said tract of land and plantation adjoining said creek, a large three story stone grist-mill and saw-mill also at great expense, which said grist-mill is still standing, and which has been at all times (before the injuries and obstructions thereto hereinafter stated

IX.—U*

and complained of) well supplied, supported and driven by the waters of the said Swatara creek, and without any impediment or obstruction of the back water of the same, and the said Christian Bear being so seised and possessed of the said tract of land, dam, and mills, as aforesaid, died; and Henry Landis and Henry Brenneman, the administrators of his estate by virtue and in pursuance of an order of the orphans' court of the said county of Dauphin, by their deed of indenture, bearing date the 1st of June 1805, for the consideration therein mentioned, granted and conveyed the said tract of land with all and singular the privileges and appurtenances thereunto belonging unto a certain Martin Grieder in fee simple, and the said Martin Grieder and Elizabeth his wife, by deed, dated the 21st of February 1816, for the consideration therein named, granted and conveyed the same to George Bower and to his heirs and assigns forever; and the said George Bower being so seised and possessed of the said tract of land, mills and premises in the year 1828 died intestate, leaving issue but one child, the aforesaid Elizabeth, intermarried with the aforesaid Christian Landis, your petitioners; and that, by the laws and usages of the commonwealth of Pennsylvania, the said tract of land, mills, mill-dam with their privileges and appurtenances, have descended to the said Elizabeth, as the heir and representative of her father, the said George Bower, and have come to the seisin and possession of the said Christian Landis in right of his said wife; that since the said tract of land with the said privileges and appurtenances came to the seisin and possession of the said Christian Landis, to wit: on the 1st of June 1828, the said Christian Landis erected, at great cost, a valuable clover-mill, attached to the said mill-dam, and driven by the waters of said creek on the said described tract of land, and without any impediment from the back water of the said creek, from which said mills your petitioners derived great profits and advantages until interrupted in the manner hereinafter complained of. That the said Christian Landis and Elizabeth his wife, being so seised and possessed of the said premises with the appurtenances, the Union Canal Company of Pennsylvania, on the first day of December in the year last aforesaid, and on divers other days and times, between that day and the presentation of the petition, entered in and upon the canals, premises, mills, privileges, hereditaments and appurtenances aforesaid, with and by their engineers, artists, officers, contractors, workmen and laborers, and then and there erected, raised, formed and made large dams and impediments and obstructions in the said Swatara creek, against the said mills and waterworks of your petitioners, and, have continued the same from the said 1st day of December 1828, to the presentation hereof, and have thereby so obstructed, stopped up and raised the waters of the said creek, and caused them to flow back upon the wheels of the said mills and other water-works of your petitioners on the said tract of land erected, as to greatly obstruct, retard and entirely pre-

vent their operation, whereby the said mills and other water-works have been rendered to a great extent useless, and the said Christian Landis deprived of the tolls and operations thereof; and other harms to the said Christian Landis and Elizabeth his wife, then and there did to their great damage. That the said Union Canal Company of Pennsylvania have not purchased from your petitioners, nor from any one under whom they claim to hold the said premises, with their privileges and appurtenances, any right or privilege appurtenant to or connected with the lands and appurtenances aforesaid, nor have they made them or any of them any satisfaction, payment or amends for the damages so done and committed on their said premises, hereditaments and appurtenances. Your petitioners therefore pray the court to award a *venire facias* directed to the sheriff of any adjoining county, to summon a jury of disinterested men in order to ascertain and report to the court the damages to the aforesaid premises, according to the provisions of the acts of the general assembly in such case made and provided; and they will pray," &c.

Upon this petition a venue was awarded to the sheriff of Cumberland county, who summoned a jury, who by their inquest found that the petitioners had sustained damages to the amount of two thousand six hundred and fifty dollars.

Upon the return of the inquisition to the court of quarter sessions, the court set the same aside on the ground, that the Union Canal Company had the privilege of erecting the dam complained of by grant, previous to the grant to Bear to erect his dam, and the privilege granted to Bear, was with reservation of the privileges secured to the canal company since vested in defendants.

In this court the following errors and reasons for reversing the judgment of the court below were assigned.

1. The court erred in setting aside the inquisition, and because there never was any legislative grant to the Schuylkill and Susquehanna Navigation Company, of an exclusive right to the waters of the Swatara creek or river.

2. Because the Union Canal Company of Pennsylvania had no right to build a dam in the Swatara, by any law passed prior to the erection of Christian Bear's dam, and by the erection of a dam in the Swatara, they forced the water back on his mills, and entered on his privileges, and damnified his real hereditaments.

3. Because the grant to Christian Bear of the waters of the Swatara, contained no proviso, rendering said grant to him of the waters of the Swatara, subject to the rights of the Schuylkill and Susquehanna Navigation Company to the use of these waters, but only contained a reservation, enabling the company to explore and locate their canal through his premises, without being trespassers in so doing; and provided against Christian Bear infringing or impairing the rights of the company, by backing the waters of the Swatara on their works or otherwise.

[Union Canal Company v. Landis.]

4. Because Christian Bear's mill was not completed until after the passage of the act of the 28th March 1803, which act authorized any persons owning property on the Swatara, to erect dams in said stream, for the purpose of supplying their mills, or other water works with water.

5. Because the Union Canal Company only succeeded to the estates purchased by the Schuylkill and Susquehanna Navigation Company.

6. Because Christian Bear's dam was erected in the Swatara twenty-five years before the Union Canal Company raised their dam, and he had acquired a right by prescription to the waters of the said creek.

7. Because, after Christian Bear had enjoyed the legislative grant to him at great expense, if the company had any right to the waters of the Swatara creek, (when they built their dam in the year 1828,) their rights, and Christian Bear's were concurrent, and neither could encroach on the rights of the other, without being responsible in damages.

8. Because Christian Bear and those claiming under him, succeeded to all the rights of the original purchasers from the proprietaries, and as such, had a prior right to use the waters of the Swatara.

9. Because, if the canal company had any rights prior to the grant to C. Bear of using the waters of the Swatara, they were repealed and divested by act of 1811, except the rights acquired by purchase of the landholders.

*Hamilton Alricks* and *Roberts*, for plaintiffs in error, cited *Pam. Laws of* 1810–11, page 226, sec. 13; 1 *Col. Rec. Doc.* 19, page 19; *Ang. on Water Courses* 3–203; 1 *Whart.* 137; 2 *Whart.* 537; 8 *Watts* 476; 6 *Bioren's Laws* 112, Act of 12th March 1800; 1 *Smith* 324, act of 1771; 4 *Bioren* 451; 4 *Rawle* 358; 1 *Rawle* 317; 1 *Cran.* 133; 6 *Bioren's Laws* 243, sec. 18; 10 *Serg. & Rawle* 69; 14 *Serg. & Rawle* 71.

*Pearson* and *Foster*, for the Union Canal Company, relied upon the Acts of 29th March 1791; 4 *Bioren's Laws* 88; of the 8th April 1793; 4 *Bioren's Laws* 251, and of the 12th March 1800; 6 *Bioren's Laws* 112.

The opinion of the Court was delivered by

Gibson, C. J.—The commonwealth having dominion over navigable streams, and having a consequent right to dispose of them at pleasure, declared the Swatara a public highway in 1771; and thus it was devoted to public use. In 1800, an act was passed, by which was granted to Christian Bear, from whom the complainants derive their title, authority to erect and maintain a dam across that stream, "provided the rights of every person whomsoever, shall remain

[Union Canal Company v. Landis.]

inviolate and unaffected by this act, especially that the privileges granted to Adam Hamaker, and the company incorporated for the purpose of opening a canal and lock navigation from Susquehanna to Schuylkill, shall not be impaired or infringed by any thing herein contained." Authority to erect a dam across the Swatara, had been given to Hamaker in 1793, with the same reservation of the rights of the company. What were those rights? " To enter upon the lands covered with water, situate upon, near, and between Tulpehoccon creek, in the county of Berks, and Swatara creek, in the county of Dauphin;" and for what purpose? Not merely " to lay out and survey the route of their canal," as mentioned in the sixth section of the act of incorporation, but evidently to appropriate the public franchise to the purpose of the work without paying for it to one individual, because it belonged to no individual. An exclusive right to the water was not expressly granted, but that the company might enter and take it without stint, was an implicit stipulation of the charter. By the grant of power to make the canal every thing necessary to the purpose, passed as incidental to it which the state had power to give; and without a right to take the water, the grant would have been useless. The state itself put that construction on the very grant under consideration; and the successors of the original grantee are bound by it. She granted the petition of their predecessor on her own terms; one of which was that he should not interfere with the company's right. What right? Not the right of taking private property for public use on payment of a compensation, for that was more efficiently secured by the constitution; but the right to be first served out of the stream, and to make, at pleasure, all erections necessary to the enjoyment of it. The residue of the use alone was subsequently granted: it was all the state had power to grant. The grantee took subject to the company's right to enter still further on the actual possession of its franchise; and he erected his dam at the express risk of interference from subsequent erections. The public right of navigation, was necessarily to continue till these should be made; and hence the necessity of a grant subsequent to the origin of the company's title, without which, a private dam would have been a nuisance. What the legislature meant to do, therefore, was not to grant an estate in the use of the stream, but to guard the occupant from prosecution for an invasion of the residue of the public franchise. The respondent, then, as that company's successor, was entitled to enter on the subject of its grant, exactly as if no grant had been made to any one else; and on the ground taken by the court below, the proceedings were properly quashed.

Judgment affirmed.